**UNITED STATES of America,**

v.

**Hani EL–SAYEGH, Appellant,**

**Washington Post Company, et al., Appellees.**

No. 97–3147.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 10, 1997.

Decided Dec. 16, 1997.

Francis D. Carter, Washington, DC, appointed by the court, argued the cause and filed Appellant's Emergency Motion for Stay Pending Appeal and Appellant's Reply to Opposition to his Emergency Motion for Stay Pending Appeal.

Steven M. Farina, Washington, DC, argued the cause for appellees Washington Post Company, et al. With him on the Response to Emergency Motion for Stay Pending Appeal were Kevin T. Baine and Thomas G. Hentoff.

L. Jackson Thomas, II, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee United States. With him on the Government's Response to Appellant's Emergency Motion for Stay Pending Appeal were Mary Lou Leary, U.S. Attorney, John R. Fisher and Mary–Patrice Brown, Assistant U.S. Attorneys.

Before: SILBERMAN, WILLIAMS and TATEL, Circuit Judges.

WILLIAMS, Circuit Judge:

This case requires us to refine the concept of "judicial records" to which there are public rights of access. We conclude that a plea agreement submitted to the court before the plea is offered, solely for the purpose of allowing the court to rule on the government's motion to seal the agreement, is not subject at that stage to a public right of access under either the First Amendment or the common law. Because no right of access exists, we find that it was error for the district court to deny defendant's motion to withdraw the plea agreement from the court's docket once the intended plea fell through.

\*　　\*　　\*

Hani El–Sayegh is a Saudi national. In March 1997 he entered Canada, where he was arrested and subjected to deportation proceedings. In April 1997 he contacted the United States government and began a series of discussions that led to the negotiation of a plea agreement. El–Sayegh signed the agreement and was admitted into the United States where, it was expected, he would enter a guilty plea and the other terms of the agreement would be performed.

Federal Rule of Criminal Procedure 11(e)(2) requires plea agreements to be disclosed "in open court or, on a showing of good cause, in camera at the time the plea is offered." Because of sensitive and confidential information in the plea agreement, both the government and El–Sayegh wanted to file the agreement under seal, and also to seal any related portion of the anticipated plea colloquy. They could do so, however, only under the procedure established by circuit law to make sure that the press and public have a fair opportunity to assert their presumptive First Amendment right of access to any agreement on which a plea is entered. See *Washington Post v. Robinson,* 935 F.2d 282, 290 (D.C.Cir.1991). *Robinson* requires the government to file a written motion to seal the plea agreement, and requires the court to enter notice of that motion in the public docket and to give interested parties a chance to be heard. *Id.* at 289. The government's motion to seal may *itself* be filed under seal, but notice of the sealed motion must still be entered in the public docket. *Id.* The court may file under seal the details of its resolution of the motion, but

only to the extent necessary to protect the secrecy of the sealed agreement. *Id.* at 289 n. 9.

In punctilious compliance with *Robinson,* the government on June 16 filed a motion to seal the plea agreement and the related portion of the plea colloquy (the "motion to seal"). A copy of the plea agreement was attached as "Exhibit A," and the motion to seal was itself filed under seal, pursuant to another motion (the "preliminary motion to seal"). The district court, also following the rules laid down in *Robinson,* directed that notice of the motion to seal be docketed on June 18. As contemplated by *Robinson,* representatives of the media promptly moved to intervene and oppose the sealing of the plea agreement.

At this point movement toward the anticipated guilty plea ceased. El–Sayegh's initial U.S. counsel, an immigration lawyer admitted to practice in the District of Columbia (and elsewhere), but not before the district court here, was unable to secure admission *pro hac vice.* On June 19 the district court appointed a new attorney to represent El–Sayegh. A series of continuances followed to allow the new lawyer to familiarize himself with the case, and the district court delayed ruling on the media's opposition to the motion to seal until it could be sure that the agreement would actually be consummated. With good reason—on July 30, El–Sayegh repudiated the agreement entirely and entered a plea of not guilty. Unable to secure corroborating evidence, the government moved on September 8 to dismiss the indictment without prejudice, and the district court granted the motion.

The collapse of the agreement did nothing to reduce the media's curiosity about its details. Learning that the plea agreement would not be offered in court, counsel for the media intervenors sought to unseal the motion to seal. El–Sayegh likewise remained fixed in his determination to keep the agreement secret, and moved to withdraw it from the court's files, where it remained as Exhibit A to the motion to seal. Only the government lost interest; while not opposing El–Sayegh's motion to withdraw the document,

it indicated an unwillingness to defend continued sealing.

The district court started from the proposition that the media had some right of access to the document. It reasoned that whether that was a constitutional right of the sort discussed in *Robinson,* or merely the broader, but weaker, common law right to judicial records described in *Washington Legal Found. v. United States Sentencing Comm'n,* 89 F.3d 897, 898 (D.C.Cir.1996), depended on whether the document was an actual plea agreement or merely a generic court document. Mem. Op. at 16. In either case, the court found, El–Sayegh had demonstrated no interest sufficient to overcome the public's right to know. *Id.* at 30–31. On October 21, it denied his motion to withdraw the document from the docket and announced its intention to release the agreement on October 28, subject to appellate intervention. We stayed the release pending appeal, and now reverse.

\*     \*     \*

The decision whether to seal a judicial record is, at least with respect to the common law right of access, committed to the discretion of the district court. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 1312–13, 55 L.Ed.2d 570 (1978). Our review is directed, however, to the question of whether a right of access (under the First Amendment or at common law) exists at all, and is consequently de novo. See *United States v. Antar,* 38 F.3d 1348, 1356–57 (3d Cir.1994). We start with the claimed constitutional right.

The First Amendment guarantees the press and the public access to aspects of court proceedings, including documents, "if such access has historically been available, and serves an important function of monitoring prosecutorial or judicial misconduct." *Robinson,* 935 F.2d at 288 (citing *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 8, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 (1986)) (*"Press–Enterprise II"*). We have found that a plea agreement, once it has actually culminated in a guilty plea, satisfies these conditions. See *Robinson,* 935 F.2d at 283, 288. An agreement that is accepted by the court, and on which a guilty plea is entered,

substitutes for the entire trial. The public right of access to trials is undisputed in both its importance and its historical pedigree. See, e.g., *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 505–10, 104 S.Ct. 819, 821–24, 78 L.Ed.2d 629 (1984) (*"Press–Enterprise I"*)(tracing history of public trial). It thus makes sense to treat a completed plea agreement as equivalent to a trial, and therefore as an item that "historically has been available."

*Robinson's* evaluation of executed plea agreements is of minor relevance to this case, however. The document at issue here was not filed with the court at the time a plea was offered; it was submitted only as an exhibit to the motion to seal. The exhibit, and the motion to seal to which it was attached, were themselves filed under seal, pursuant to the preliminary motion. And the district court never ruled on the motion to seal, because the plea agreement itself collapsed. *Robinson's* procedures were invoked and began to function, but were then abruptly and completed mooted.

■ Under the *Press–Enterprise II* standards, we think it is clear that there is no First Amendment right of access to this document. There can hardly be a historical tradition of access to the documents accompanying a procedure that did not exist until *Robinson* imposed it in 1991. This fact by itself is of course not dispositive: A new procedure that substituted for an older one would presumably be evaluated by the tradition of access to the older procedure. See *In re Reporters Committee for Freedom of the Press,* 773 F.2d 1325, 1337 (D.C.Cir.1985). But the *Robinson* requirements are an entirely novel byproduct of the recognition of a First Amendment right of access to plea agreements; courts do not otherwise receive samples of the agreements before the pleas are offered. See Federal Rule of Criminal

Procedure 11(e)(2) (providing for disclosure of agreement to court at time plea is offered). Thus it is impossible to say that access to such a document has historically been available, and the media intervenors' claim fails to satisfy the first of the two necessary criteria for a First Amendment right of access. We thus turn to the common law right of access, which is largely controlled by the second of the First Amendment criteria—the utility of access as a means of assuring public monitoring of judicial or prosecutorial misconduct. *Reporters Committee,* 773 F.2d at 1336.

\* \* \*

■ The common law right of access to judicial records antedates the Constitution. See *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157, 161 (3d Cir.1993). But not all documents filed with courts fall within its purview—at least, not in this circuit. Compare *Reporters Committee,* 773 F.2d at 1335–36, 1340 (no common law right of access to prejudgment records in civil cases) with *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 782 (3d Cir.1994) (existence of right depends on "whether a document is physically on file with the court").[1]

■ The right to inspect judicial records is a species of the right to inspect public records, *Nixon v. Warner Communications, Inc.* 435 U.S. at 597, 98 S.Ct. at 1311–12, and we have recently examined the question of what constitutes a "public record," see *Washington Legal Found.,* 89 F.3d at 897. As to both sets, we grounded the concept in "the public's interest in keeping 'a watchful eye on the workings of public agencies,'" *id.* at 905, quoting *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312. See also *Reporters Committee,* 773 F.2d at 1336–37 (rejecting claim of First Amendment access to documents in civil case prior to judgment, noting absence of any

---

1. The media intervenors argue that El–Sayegh has conceded that the document is a judicial record, to which the right attaches. At times, El–Sayegh might seem to admit that either the First Amendment or the common law standard must apply. See, e.g., Appellant's Emergency Motion for Stay Pending Appeal at 10 ("[I]f we are correct and the First Amendment's guarantees do not apply, then the document must be considered under the common-law right of ac-

cess to the court documents."). But he also consistently advances, and cites appropriate precedent for, the proposition that because this document has never been the subject of judicial action, it is not a judicial record and no public right of access exists. See *id.* at 10–11. We take El–Sayegh's argument to be simply that after finding no First Amendment right, one considers the common law—and finds no right there either.

need of access for public review of judicial process). For public records generally, we found excluded *"documents that are preliminary, advisory, or, for one reason or another, do not eventuate in any official action or decision being taken."* Washington Legal Found., 89 F.3d at 905 (emphasis added). The part of the exclusion relating to "preliminary" or "advisory" records, however, we found inapplicable to judicial records, noting that "[a] court proceeding . . . is in its entirety and by its very nature a matter of legal significance." *Id.* at 906. We explained, "Indeed, the meaning and legal import of a judicial decision is a function of the record upon which it was rendered." *Id.*

This principle, of course, assumes a judicial decision. If none occurs, documents are just documents; with nothing judicial to record, there are no judicial records. Cf. *Anderson v. Cryovac Inc.*, 805 F.2d 1, 13 (1st Cir.1986) (restricting common law right of access to "materials on which a court relies in determining the litigants' substantive rights"); *Reporters Committee*, 773 F.2d at 1335–39 (similar).[2]

The only judicial act related to this document is the district court's determination to release it, which is the source of this appeal. The court did grant the preliminary motion, which asked it to seal the motion to seal, but doing so gave the court no occasion to consider the agreement attached as an exhibit to the main motion; the grant was simply a step to preserve the relevant secrecy interests until the *Robinson* process had run its course—and was necessary so that that process would not be rendered pointless by a disclosure before the court made its *Robinson* determination.

Even had the court ruled on the motion to seal proper, we do not think that the public would acquire a right of access to a plea agreement simply because a court examined it to determine whether, if it were eventually filed, it might be filed under seal. Allowing a court to decide whether information may be withheld from the public, without simulta-

neously disclosing it to the public, obviously limits the role of public scrutiny as a constraint on judicial error. But that particular constraint cannot flourish in full in this context; affording public scrutiny is logically incompatible with the nature of the proceedings. The *Robinson* procedures are a reaction to—and hence an implicit acknowledgment of—just that impossibility. Similarly, the fact that the document is now the subject of *this* judicial proceeding—which is being held to determine if a right exists—does not create the very right in question; that is just bootstrapping.

The idea's logical incoherence is, of course, reflected in its practical effects—to thwart the use of documents that parties would not submit at all without assurances of confidentiality. We can readily imagine, for example, cases where the unsealing of a plea agreement would be a deal-breaker. If moving to file the plea agreement under seal resulted in disclosure of the agreement when the motion was not granted, even if the plea was then not offered at all, defendants in such cases would be unlikely to run the risk of trying. This chilling of plea negotiations is precisely the evil sought to be avoided by Federal Rule of Criminal Procedure 11(e)(6), which provides that guilty pleas later withdrawn, or statements made to government attorneys in the course of plea discussions that do not result in a guilty plea or that result in a guilty plea later withdrawn, are inadmissible in subsequent proceedings. See H.R.Rep. No. 94–247, 94th Cong., 1st Sess. 7 (1975), U.S. Code Cong. & Admin. News at 674, 679 (discussing earlier version, notes risk that use would "discourage defendants from being completely candid and open during plea negotiations"). In construing an earlier version of this rule, we were guided by a recognition of "the need for free and open discussion between the prosecution and the defense during attempts to reach a compromise." *United States v. Davis*, 617 F.2d 677, 683 (D.C.Cir.1979).

2. Thus, where a plea agreement is offered to the court and *rejected* under Rule 11(e)(4), the rejection itself would presumably constitute a judicial act that would be assessable by the public only by reference to the agreement. The agreement would therefore be a judicial record to which the common law right would attach.

While admissibility as evidence is not at issue here, the policy in favor of candid plea negotiations is directly implicated, as is the policy in favor of civil settlement, since submission to a court would pose the same risks for civil parties seeking to seal their settlement agreement. In that context, discussing settlement negotiations between employers and the Equal Employment Opportunity Commission, we have noted that "only by keeping such data strictly confidential can employers be encouraged to discuss openly and frankly the possible grounds for an amicable resolution of the disputes at hand." *Sears, Roebuck & Co. v. EEOC*, 581 F.2d 941, 948 (D.C.Cir.1978). Public access to unconsummated plea agreements cannot be squared with the confidentiality required for candid negotiations. The district court's involvement in those negotiations—at least its decision whether a plea agreement may be filed under seal—is consequently not a judicial function that admits of public oversight; it is one of those "government operations that would be totally frustrated if conducted openly." *Press–Enterprise II*, 478 U.S. at 9, 106 S.Ct. at 2740.

The details of the plea agreement may, of course, be relevant to evaluating the performance of the Department of Justice or other law enforcement agencies in their dealings with El–Sayegh. But that is not the judicial function, and proper public oversight of the executive neither requires nor justifies claims of access to the records of the judiciary. The appropriate device is a Freedom of Information Act request addressed to the relevant agency. Cf. *Nixon*, 435 U.S. at 605–06, 98 S.Ct. at 1316 (existence of statutory disclosure mechanisms weighs against court-mandated disclosure).

We thus hold that what makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process. See *Anderson*, 805 F.2d at 13; *Reporters Committee*, 773 F.2d at 1335–37. This document has played no role in any adjudicatory function—save, of course, those functions relating to its very disclosure. Moreover, no role in even a completed *Robinson* proceeding, standing alone, could have been enough to create any public right of access. Thus the district court erred in denying El–Sayegh's unopposed motion to withdraw the agreement from the court's docket. With the collapse of the agreement and the dismissal of the indictment, the motion to seal is obviously moot; the motion to withdraw it and its accompanying exhibit should have been granted.

*Reversed.*