The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date: March 11, 2025

**No. A-1-CA-41149**

**AARON BORREGO and VIRGIL VIGIL,**

Petitioners-Appellants,

v.

**FIRST JUDICIAL DISTRICT ATTORNEY'S OFFICE and FELICIA LUJAN,**

Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Bryan Biedscheid, District Court Judge**

Stalter Law LLC
Kenneth H. Stalter
Albuquerque, NM

for Appellants

Long, Komer & Associates, P.A.
Nancy R. Long
Jonas M. Nahoum
Santa Fe, NM

for Appellees

Amanda R. Lavin, Legal Director
Albuquerque, NM

for Amicus Curiae New Mexico Foundation for Open Government

Raúl Torrez, Attorney General
Santa Fe, NM
Aletheia V.P. Allen, Solicitor General
Alexander W. Tucker, Assistant Solicitor General
Lawrence M. Marcus, Assistant Solicitor General
Albuquerque, NM

for Amicus Curiae New Mexico Department of Justice

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM
Adrianne Turner, General Counsel
Albuquerque, NM

for Amicus Curiae Law Office of the Public Defender

**OPINION**

**MEDINA, Judge.**

{1}     Petitioners Aaron Borrego and Virgil Vigil appeal the district court's order granting Respondents' motion for summary judgment, under the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023).[1] Petitioners contend that the district court erred in concluding that the following were not subject to disclosure under IPRA: (1) the content of plea negotiations between the First Judicial District Attorney's Office (FJDA) and attorneys representing defendants and (2) the mandatory statements of admission the defendants submitted with their applications to participate in the FJDA's preprosecution diversion program (PPD). We are satisfied, in light of district attorneys' constitutional role in New Mexico's criminal justice system, defendants' constitutional rights to effective assistance of counsel and to a public trial by an impartial jury, and our Supreme Court's recognition of the evidentiary privilege expressed in Rule 11-410 NMRA, *see Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-026, 283 P.3d 853; *State v. Trujillo*, 1980-NMSC-004,

---

[1]The requests at issue in this appeal were submitted in August 2021. The language of IPRA was amended in 2023, but the specific section relied on by the parties has not substantially changed. The 2023 amendment renumbered the "as otherwise provided by law" exception to IPRA from Section 14-2-1(H) (2019) amendment to Section 14-2-1(L). We, therefore, cite the 2023 version of IPRA throughout this opinion for ease of reference and to prevent confusion about the current law.

93 N.M. 724, 605 P.2d 232, that the "as otherwise provided by law" exception, § 14-2-1(L), shields records of plea negotiations from disclosure under IPRA. For the same reasons we hold that mandatory statements of admission submitted under the PPD are excepted from disclosure.

**BACKGROUND**

{2}     The FJDA charged nine individuals for their roles in destroying the Soldier's Monument in the Santa Fe Plaza, Santa Fe, New Mexico, commonly referred to as the Obelisk. The FJDA's prosecutors and the defendants, through counsel, engaged in plea negotiations. Many, if not all, plea negotiations were conducted through email. Ultimately, the FJDA permitted the defendants to submit applications to the FJDA's PPD. *See* NMSA 1978, § 31-16A-7 (2019) (permitting a district attorney to suspend criminal proceedings and divert defendants to PPD as provided for under the Preprosecution Diversion Act, NMSA 1978, §§ 31-16A-1 to -8 (1981, as amended through 2019) (the Act)). The express purpose of the Act is to "remove those persons from the criminal justice system who are most amenable to rehabilitation and least likely to commit future offenses, to provide those persons with services designed to assist them in avoiding future criminal activity, to conserve community and criminal justice resources, to provide standard guidelines and to evaluate preprosecution programs." Section 31-16A-2.

{3}     Among the requirements of the FJDA PPD application and assessment process, the defendants were required to submit statements of admission setting forth the elements of each crime committed.[2] The defendants submitted their statements and eight of the defendants (the Obelisk defendants) were accepted to participate in the program.[3]

{4}     Three months later, Petitioners submitted written IPRA requests to the FJDA and Felicia Lujan, Records Custodian, (collectively Respondents) seeking, among other items, emails relating to the plea negotiations between the FJDA's prosecutors and attorneys representing the Obelisk defendants, as well as their statements of admission. Respondents provided Petitioners with copies of the emails with the content of the plea negotiation discussions redacted. Respondents did not provide Petitioners with the statements of admission. As grounds for redacting the emails and withholding the statements of admission, Respondents asserted that the records were: (1) attorney work product, (2) "attorney-client privileged communications,"

---

[2]The FJDA PPD included a waiver in which participants waived their rights to privacy under the arrest record information act, and, with the exception of statements of admission, authorized the FJDA to release to the public all information submitted by the applicant in their application to PPD.

[3]Defendants who are not accepted into PPD may request the return of their statements of admission and those statements will not be used against them. Presumably, plea negotiations would then resume. When a defendant is admitted in the PPD but is subsequently discharged, the admission statement may be used as evidence against the defendant.

(3) "include[d] privileged plea discussions or relate to the possible settlement/resolution of pending litigation," and (4) confidential under the Act.

{5} Petitioners filed petitions for alternative writs of mandamus, which were later consolidated. Petitioners alleged in part that the redacting of the documents and failure to produce documents violated IPRA because no lawful exception to disclosure applied. Petitioners also filed a motion for summary judgment (MSJ), reiterating their claim that IPRA did not except records of plea negotiations.[4] Petitioners argued that, while Rule 11-410, Rule 11-408 NMRA, and Rule 5-304 NMRA govern the admissibility of plea negotiations as to the negotiating defendants, the rules do not create a privilege in other contexts. Respondents replied in part that the redacted material and withheld statements of admission were privileged under Rule 11-410 and therefore excepted from disclosure under Section 14-2-1(L).

{6} The district court deferred ruling on the MSJ and directed counsel for the parties to consult with the Obelisk defendants and ascertain their position as to: "(1) whether [their] plea negotiations [were] privileged; and (2) if so, whether [they] waive[d] any privilege as to the email communications and [their] statements of admission." The Obelisk defendants filed a joint report, with an attached letter in which they asserted that their plea negotiations and statements of admission were

---

[4]Petitioners filed two other MSJs that are not pertinent to this appeal.

privileged and protected by the New Mexico Rules of Criminal Procedure and the New Mexico Rules of Evidence. The Obelisk defendants additionally maintained that the release of the requested information would violate and infringe on their Fifth Amendment rights and their contractual agreements with the FJDA. Counsel for the Obelisk defendants asserted in general that several of their clients received threats and that release of the documents posed safety concerns.

{7}    The district court denied the MSJ, concluding that the requested information was appropriately redacted and/or withheld under Section 14-2-1(L). Specifically, the district court concluded that "[c]onstitutional rights, evidentiary privilege, judicial procedure, and the good faith contractual rights of third parties can be sources of such law or legal right referenced in [Section 14-2-1(L)]." Respondents then moved for summary judgment on the grounds that they did not violate IPRA as a matter of law, which the district court granted reiterating its prior ruling. Petitioners appeal the district court's order granting Respondents' MSJ.

**DISCUSSION**

{8}    Petitioners continue to assert that there is no IPRA exception permitting the redaction or withholding of documents containing plea negotiations. Petitioners contend that the evidentiary rules governing plea negotiations govern admissibility, not disclosure under IPRA; the disclosure of plea negotiations under IPRA does not implicate the Fifth Amendment privilege against self-incrimination; only statutes

and regulations may provide an exception to disclosure under IPRA and neither the Respondents nor the Obelisk defendants invoked any statutory or regulatory exceptions to disclosure; government agencies may not use contracts to "thwart" disclosure under IPRA; and there is no IPRA exception based on allegations that disclosure will endanger a person. Respondents answer that evidentiary privileges, Fifth Amendment protections, and contractual rights provide a basis for withholding the information.

{9}     We first outline the standard of review and the analytical framework for IPRA and the "as otherwise provided by law" exception. We then reflect on the public's right to access information under IPRA as weighed against governmental privilege to withhold information as outlined in *Republican Party*. Next, we consider Rule 11-410, the principle of candor underlying plea negotiations, and the constitutional and legislative foundations of district attorney authority, as well as defendants' constitutional rights to effective assistance of counsel and a public trial with an impartial jury. Because we resolve the issue before us based upon the evidentiary privilege for plea negotiations and the implicated constitutional considerations, we do not address the remaining arguments of the parties.[5]

---

[5]Petitioners did not assert that a distinction between the plea negotiation emails and the statements of admission at issue exists such that it would implicate a distinction in our analyses for the two types of information. We therefore assume without deciding that the statements of admission are effectively a component of the plea negotiation process under the PPD.

## I. The Limits of the Public's Right to Access Information Under IPRA

{10} The parties contest whether Rule 11-410 is a "privilege" recognized by our Supreme Court such that it excepts documents containing plea negotiations and discussions in criminal cases from disclosure under IPRA. Petitioners and Amicus Curiae New Mexico Foundation for Open Government (NMFOG) assert in part that Rule 11-410 is an evidentiary rule governing admissibility of evidence and not a rule of "privilege" or confidentiality that prohibits disclosure in other contexts. Respondents answer that our Supreme Court has already identified Rule 11-410 as a "privilege." *See Trujillo*, 1980-NMSC-004, ¶ 21 ("[A] weighing of conflicting policies demonstrates that the balance is tipped in favor of interpreting Rule [11-]410 as the cloak of privilege around plea negotiation discussions."). Similarly, Amicus Curiae the New Mexico Department of Justice (NMDOJ) and Amicus Curiae Law Offices of the Public Defender (LOPD) argue that the privilege expressed in Rule 11-410 shields the disclosure of plea negotiation documents. Respondents, as well as NMDOJ and LOPD, additionally discuss the ramifications to the criminal justice system that will result from opening the door to IPRA requests for documents containing plea negotiation discussions, including, in part, significantly hindering plea negotiations and prosecutors' ability to obtain testimony from cooperative codefendants.

## A. Standard of Review, IPRA, and the "as Otherwise Provided by Law" Exception to Disclosure

{11} The issues in this appeal raise questions of statutory interpretation arising from the district court's grant of summary judgment. With no facts in dispute, our review of the district court's summary judgment order involves purely legal questions, which we review de novo. *See Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582; *Dunn v. N.M. Dep't of Game & Fish*, 2020-NMCA-026, ¶ 3, 464 P.3d 129 (noting that this Court reviews de novo disputes that require us to "construe the statute and apply the relevant case law to undisputed facts").

{12} Our Legislature enacted IPRA to promote the goal of transparency in our state government:

> Recognizing that a representative government is dependent upon an informed electorate, the intent of the [L]egislature in enacting [IPRA] is to ensure, and it is declared to be the public policy of this state, that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees.

Section 14-2-5. "IPRA is intended to ensure that the public servants of New Mexico remain accountable to the people they serve." *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 16, 150 N.M. 64, 257 P.3d 884. "The citizen's right to know is the rule and secrecy is the exception." *State ex rel. Newsome v. Alarid*,

1977-NMSC-076, ¶ 34, 90 N.M. 790, 568 P.2d 1236, *superseded by statute as stated in Republican Party of N.M.*, 2012-NMSC-026.

**{13}** Under IPRA, "[e]very person has a right to inspect public records," § 14-2-1, by making a request pursuant to the procedures set forth in Section 14-2-8. IPRA expressly enumerates categories of records that are excepted from inspection. *See* § 14-2-1(A)-(K) (enumerating among other things: attorney-client privileged information, trade secrets, and governmental emergency response plans). In addition to these specifically enumerated disclosure exceptions, IPRA excepts records from inspection "as otherwise provided by law." Section 14-2-1(L). This exception includes statutory and regulatory bars to disclosure, constitutionally mandated privileges, and privileges established by our rules of evidence. *Republican Party*, 2012-NMSC-026, ¶ 13.

**B.      *Republican Party* and the Public's Right to Information Weighed Against Privilege Under IPRA**

**{14}** In *Republican Party*, our Supreme Court considered "executive privilege in the context of a public records request," and whether such privilege would qualify under the "as otherwise provided by law" exception to disclosure, the same exception that we address in this opinion. *Id.* ¶¶ 3, 13-16 (internal quotation marks and citations omitted). The case weighed "a conflict between . . . two important principles." *Id.* ¶ 3. On the one side, our Supreme Court recognized the principle underlying IPRA's mandate that "'a representative government is dependent upon

9

an informed electorate.'" *Id.* ¶ 1 (quoting § 14-2-5). On the other hand, our Supreme Court observed that "[o]ur constitution and laws recognize that under certain circumstances the [g]overnor is entitled to a limited degree of privilege . . . in the course of performing [their] duties" in part because "[u]nder the New Mexico Constitution, the people delegate . . . 'supreme executive power of the state'" in the governor. *Id.* ¶ 2 (quoting N.M. Const. art. V, § 4). Our Supreme Court recognized that, while "the public's right to access information concerning the inner workings of its government is considerable, it is not without limit." *Id.* As such, the Court was called upon "to delineate under what circumstances the executive may properly invoke that privilege pursuant to IPRA." *Id.* ¶ 3.

{15}  To do so, the Court assessed the history of the "rule of reason," which had been applied by the courts since *Newsome*, 1977-NMSC-076, to determine "whether records not specifically exempted by IPRA nonetheless should be withheld from the requester on the grounds that disclosure would not be in the public interest." *Republican Party*, 2012-NMSC-026, ¶ 15 (internal quotation marks and citation omitted). The Court in *Newsome* suggested that the Legislature "delineate what records are subject to public inspection and those that should be kept confidential in the public interest" and the Legislature has since accommodated this request. 1977-NMSC-076, ¶ 33. At the time of the decision in *Newsome*, in addition to the "as otherwise provided by law" exception, three specific exceptions were delineated. *Id.*

10

¶ 8; *see* NMSA 1953, § 71-5-1 (1973) (recompiled as §§ 14-2-1). At the time of *Republican Party*, thirty-five years later, an additional four specific exceptions were delineated. *See* § 14-2-1 (2012). As such, our Supreme Court in *Republican Party* determined that "any need that existed for application of the 'rule of reason'" was obviated. 2012-NMSC-026, ¶ 16.

{16}     Further, in considering the history of the executive privilege in New Mexico, *Republican Party* observed the explanation stated in *State ex rel. Attorney General v. First Judicial District Court of New Mexico*, that "'for a privilege to exist in New Mexico, it must be recognized or required by the [N.M.] Constitution, the Rules of Evidence, or other rules of [our Supreme Court].'" *Id.* ¶ 35 (quoting *State ex rel. Att'y Gen. v. First Jud. Dist. Ct.*, 1981-NMSC-053, 96 N.M. 254, 629 P.2d 330, *abrogated on other grounds by Republican Party of N.M.*, 2012-NMSC-026).

{17}     Our Supreme Court in *First Judicial*, cited *United States v. Nixon*, 418 U.S. 683 (1974), agreeing that "[t]he purposes of the executive privilege are to safeguard the decision-making process of the government by fostering candid expression of recommendations and advice and to protect this process from disclosure." *First Jud. Dist. Ct.*, 1981-NMSC-053, ¶ 17. The *Republican Party* Court reasoned, "*First Judicial District Court* identified the competing interests as 'the public's interest in preserving confidentiality to promote intra[]governmental candor,' and 'the individual's need for disclosure of the particular information sought.'" *Id.* ¶ 36

11

(quoting *First Judicial*, 1981-NMSC-053, ¶ 22). *Republican Party* identified that these rationales "could support the executive communications privilege, the deliberative process privilege, or both," but disavowed this logic "to the extent that it could be read to support the adoption of the deliberative process privilege." *Id.* ¶¶ 41, 42. *Republican Party* then followed "the principles established by *First Judicial*" in holding "that our jurisprudence supports a limited form of executive privilege derived from the constitution" and proceeded to clarify its scope. *Id.* ¶ 43

{18} Fundamentally, in moving forward to determine "under what circumstances the executive may properly invoke that privilege pursuant to IPRA," our Supreme Court explained how courts should analyze the question of whether it is appropriate to withhold information from disclosure under IPRA. *Id.* ¶ 3. Specifically, information "may be withheld because of a specific exception contained within IPRA, or statutory or regulatory exceptions, or privileges adopted by this Court or grounded in the constitution." *Id.* ¶ 16.

## C. Rule 11-410, *Trujillo*, and the Protection of Candor During Plea Negotiations

{19} Relying on the plain language of Rule 11-410, Petitioners contend that this rule only governs "when plea statements are 'admissible'" and "[n]othing in the rule prohibits using those statements against other persons or in other contexts." NMFOG additionally asserts that Rule 11-410 is not applicable to the Defendants because the rule "explicitly prohibits admission of evidence of a guilty plea when the defendant

12

withdraws their plea or does not plead guilty" and "affords no such protection for a guilty plea that is successful."

{20} The interpretation of a provision of the New Mexico Rules of Evidence is a question of law which we review de novo. *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 11, 267 P.3d 806. "When construing our procedural rules [promulgated by our Supreme Court], we use the same rules of construction applicable to the interpretation of statutes." *Id.* "Under the plain meaning rule, when a [rule]'s language is clear and unambiguous, we will give effect to the language and refrain from further [rule] interpretation." *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). "In applying the plain meaning rule, we additionally consider the context surrounding a particular [rule], such as its history" and "its apparent objective." *State v. Archuleta*, 2023-NMCA-077, ¶ 9, 536 P.3d 528 (internal quotation marks and citation omitted). "[I]n giving effect to the plain meaning of the rule, we take care to avoid an absurd or unreasonable result." *Id*.

{21} We begin with the language of Rule 11-410. Rule 11-410 states:

> A. Prohibited uses. In a civil, criminal, or children's court case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
> (1) a guilty plea that was later withdrawn;
>
> (2) a nolo contendere plea;

13

> > (3) an admission in a delinquency case;
>
> > (4) a statement made during a proceeding on any of those pleas or admissions in any court;
>
> > (5) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or resulted in a later-withdrawn guilty plea.
>
> B. Exceptions. The court may admit a statement described in Rule 11-410(A)(4) or (5) . . .
>
> > (1) in any proceeding in which another statement made during the same plea or plea discussions has been introduced, if in fairness both statements ought to be considered together, or
>
> > (2) in a criminal proceeding for perjury or false statement, if the defendant made the statement under oath, on the record, and with counsel present.

{22} Our Supreme Court first interpreted Rule 11-410 in *Trujillo* and held that Rule 11-410 precluded the admissibility of an incriminating statement made in connection with a plea negotiation to impeach the defendant in a subsequent criminal proceeding. *Trujillo*, 1980-NMSC-004, ¶¶ 3, 6. In so holding, the Court reasoned,

> Rule [11-]410 embodies the public interest in encouraging negotiations concerning pleas between the criminal defendant and the [s]tate. Guilty pleas are an essential part of our criminal justice system, and candor in plea discussions aids greatly in the reaching of agreements between the defendant and the [s]tate. This ultimately results in the speedy disposition of cases.

*Id.* ¶ 18; *see also Santobello v. New York*, 404 U.S. 257, 260-61 (1971) (recognizing that plea bargaining "is an essential component of the administration of justice" in supporting "prompt and largely final disposition of most criminal cases," avoiding

14

"the corrosive impact of enforced idleness during pre[]trial confinement," protecting "the public from those accused persons who are prone to continue criminal conduct even while on pretrial release," and enhancing "the rehabilitative prospects of the guilty when they are ultimately imprisoned" by "shortening the time between the charge and [the] disposition"); *Missouri v. Frye*, 566 U.S. 134, 143 (2012) (recognizing that "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas"). As our Supreme Court in *Trujillo* recognized, these policy considerations are similar to those the President's Commission on Law Enforcement and Administration of Justice (the Commission) found influential in approving plea bargaining:

> The negotiated guilty plea serves important functions. The quality of justice in all cases would suffer if overloaded courts were faced with a great increase in the number of trials. Tremendous investments of time, talent, and money, all of which are in short supply and can be better used elsewhere, would be necessary if all cases were tried.

1980-NMSC-004, ¶ 18 (omission, internal quotation marks, and citation omitted). The *Trujillo* Court further supported its interpretation of Rule 11-410 as "closing the door on the admissibility of all of these matters as evidence at trial for either substantive or impeachment purposes" by observing "[t]he attorney for the [s]tate and the attorney for the defendant or the defendant acting pro se need to feel free to discuss the merits of the case, the alternatives for disposition, and the possible concessions each is willing to make." *Trujillo*, 1980-NMSC-004, ¶ 19. The Court

concluded "a weighing of conflicting policies demonstrates that the balance is tipped in favor of interpreting Rule [11-]410 as the cloak of privilege around plea negotiation discussions." *Trujillo*, 1980-NSMC-004, ¶ 21.

{23} The Commission's recognition that negotiated plea agreements conserve resources is similar to one of our Legislature's expressed purposes of the Act: to conserve criminal justice resources. *See* § 31-16A-2 (outlining the purpose of the Act as "remov[ing] those persons from the criminal justice system who are most amendable to rehabilitation and least likely to commit future offenses, to provide those persons with services designed to assist them in avoiding future criminal activity, *to conserve community and criminal justice resources*, to provide standard guidelines and to evaluate preprosecution programs." (emphasis added)).[6]

**D.    District Attorney Constitutional Authority, Confidentiality in Plea Discussions, Effective Assistance of Counsel, and the Right to a Public Trial by Impartial Jury**

{24} The New Mexico Constitution identifies the district attorney as "the law officer of the state and of the counties within [their] district." N.M. Const. art. VI,

---

[6]With regard to achieving the expressed purposes of the Act, we do not overlook that our Legislature requires each district attorney to establish a PPD. *See* § 31-16A-3. And our Legislature conferred upon each district attorney significant discretion in deciding who should be admitted into the program. *See* § 31-16A-4(B). Jeopardizing candor in communications made in relation to a PPD would make it more difficult for district attorneys to perform their duties and exercise their discretion. This may also have a chilling effect on defendants seeking PPD consideration during the plea negotiation process.

§ 24. We recognize that inherent in this constitutional authority to enforce the law is discretion. *See State v. Session*, 1978-NMCA-005, ¶ 2, 91 N.M. 381, 574 P.2d 600 ("The prosecutor makes the determination whether to file criminal charges and which charges to file" (internal quotation marks and citation omitted)).[7] This discretion is manifest in the plea discussion process. *See State v. Romero*, 2023-NMSC-008, ¶ 43, 528 P.3d 640 ("A plea agreement is negotiated between the defendant and the prosecution, and the parties may negotiate the terms of a plea agreement to the full extent allowed by law." (internal quotation marks and citation omitted)); *see also State v. Surratt*, 2016-NMSC-004, ¶ 14, 363 P.3d 1204 (reasoning, while determining "clear evidence of an intent by the Legislature [is required] to limit prosecutorial discretion," that "courts must be wary not to infringe unnecessarily on the broad charging authority of district attorneys" (internal quotation marks and citation removed)). Further, a presumption of confidentiality persists throughout the discretionary plea negotiation process. *See United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) ("Public access to unconsummated plea agreements cannot be squared with the confidentiality required for candid

---

[7] The position of attorney general is established in the New Mexico Constitution, and has been vested, as head of the NMDOJ, with concurrent authority to prosecute criminal offenses with district attorneys by our Legislature. N.M. Const. art. V, § 1; *see* NMSA 1978, § 8-5-1 (1933); NMSA 1978, § 8-5-2 (1975); NMSA 1978, § 8-5-3 (1933). Accordingly, similar reasoning as applied in this section and opinion to district attorneys applies to the attorneys general.

17

negotiations.").[8] As the LOPD and NMDOJ agree here, the parties rely on this confidentiality. *See El-Sayegh*, 131 F.3d at 163. Without it, the entire process would be encumbered, if not rendered practically impossible. *See id.* at 162.

{25} Public disclosure of this information does not just risk the chilling consequences implied in the analysis of *Trujillo*. *See* 1980-NMSC-004, ¶¶ 18-19; *see also El-Sayegh*, 131 F.3d at 162 ("This chilling of plea negotiations is precisely the evil sought to be avoided by [Fed. R. of Crim. P.] 11(e)."). Among other things, plea negotiations may include sensitive information about victims and witnesses,

---

[8]In *El-Sayegh*, the D.C. Circuit Court of Appeals considered "refin[ing] the concept of 'judicial records' to which there are public rights of access." 131 F.3d at 159. The court "conclud[ed] that a plea agreement submitted to the court before the plea is offered, solely for the purpose of allowing the court to rule on the government's motion to seal the agreement, is not subject at that stage to a public right of access under either the First Amendment or the common law." *Id.* We recognize *El-Sayegh* considers public rights of access to judicial documents as they relate to the First Amendment of the U.S. Constitution and the common law, and it is therefore distinguishable in several respects to the issue before this Court. Despite the differences in the pertinent legal frameworks, we consider *El-Sayegh* useful in identifying the purposes of rules of admissibility relating to the plea process and providing insight on the policy underlying the admissibility rule at issue here. Further, we observe *El-Sayegh* articulates that a Freedom of Information Act request may be the "appropriate device" to access the details of plea agreements for the sake of "evaluating the performance of the Department of Justice or other law enforcement agencies in their dealings with [a defendant]." *Id.* at 163. The public's access to government records to enable public oversight of government operations is a key principle underlying IPRA. *See Republican Party*, 2012-NMSC-026, ¶ 1 (determining the applicability of exceptions to disclosure under IPRA by reasoning, "[w]ithout some protection for the acquisition of information about the operation of public institutions . . . the process of self-governance contemplated by the Framers would be stripped of its substance" (internal quotations marks and citation omitted)). This countervailing policy consideration is spoken to in part below.

18

and expressions of a defendant's willingness to cooperate against people who have been charged with crimes, some of whom might pose a threat of physical harm to a potential cooperating witness or a threat of intimidating such a witness. For these reasons, we observe that in order for a district attorney to satisfy their constitutional mandate as the "law officer of the state and of the counties within [their] district," confidentiality in their plea negotiations and discussions with criminal defendants or their counsel is implied. N.M. Const. art. VI, § 24.

{26} Further, we recognize there are relevant additional constitutional considerations from the perspective of defendants during the plea negotiation process. Notably, there is a constitutional right to effective assistance of counsel that "extends to the plea[ ]bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see also Frye*, 566 U.S. at 144 ("The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties. In order that these benefits can be realized, however, criminal defendants require effective counsel during plea negotiations."). "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel [too] have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Frye*, 566 U.S. at 143; *see State*

19

*v. Paredez*, 2004-NMSC-036, ¶¶ 13-14, 136 N.M. 533, 101 P.3d 799 (recognizing the Sixth Amendment right to effective assistance of counsel during plea negotiations). In order to effectively represent the accused during plea negotiations, defense counsel must be able to communicate candidly with the prosecutor—without fear that those communications will be disclosed to the public.

{27} Disclosure of the content of plea negotiations additionally risks impeding on a defendant's right to a public trial by impartial jury. "The Sixth Amendment to the United States Constitution requires in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.' An impartial jury is one that 'does not favor one side more than another, treats all alike, [and] is unbiased, equitable, fair and just." *State v. Romero*, 2023-NMSC-014, ¶ 7, 533 P.3d 735 (internal quotation marks and citation omitted). Our State constitution requires the same. *See* NM Const. art. II, § 14 (providing the right to "a speedy public trial by an impartial jury"). Questioning prospective jurors during voir dire with respect to their ability to apply the law impartially is the primary method in our criminal justice system to uncover bias. *Romero*, 2023-NMSC-014, ¶ 8. Public disclosure of the contents of plea negotiations risks informing potential jurors of facts regarding a criminal case in those instances where plea negotiations do not resolve a case against a defendant or all codefendants. The result of which could lead to the tainting of an entire jury pool during voir dire and/or jeopardizing a jury verdict. *Cf. State v. Perea*,

20

1981-NMCA-033, ¶¶ 2, 14-15, 95 N.M. 777, 626 P.2d 851 (holding that juror exposure by another juror to a newspaper article suggesting that the defendant was guilty required a new trial).

**II.      Rule 11-410 and the Federal and New Mexico Constitutions Provide a Basis for Withholding Disclosure of the Emails and Admissions Under the "as Otherwise Provided by Law" Exception**

{28}      The reasoning underlying the requirement for candor in communications between district attorneys and criminal defendants in fostering effective plea agreements is analogous to the reasoning underlying the requirement for candor in intragovernmental executive communications as recognized in *First Judicial* and *Republican Party*. *See First Judicial*, 1981-NMSC-053, ¶ 17; *Republican Party*, 2012-NMSC-026, ¶ 36. The office of the district attorney is a constitutional office with duties prescribed by the Legislature. *See* N.M. Const. art. VI, § 24 (establishing the district attorney as "the law officer of the state and of the counties within [their] district" and authorizing legislation to prescribe duties and qualifications for their office); NMSA 1978, § 36-1-18(A)(1) (2001) (requiring each district attorney to "prosecute . . . all cases, criminal and civil, in which the state or any county in [their] district may be a party or may be interested). In performing these duties, district attorneys often rely on confidentiality akin to a privilege to facilitate candor from criminal defendants. *Cf. Republican Party*, 2012-NMSC-026, ¶ 2 ("Our constitution and laws recognize that under certain circumstances the [g]overnor is entitled to a

limited degree of privilege . . . in the course of performing [their] duties" in part because "[u]nder the New Mexico Constitution, the people delegate . . . supreme executive power of the state" in the governor. (internal quotation marks and citation omitted)).

{29} Our Supreme Court in *Trujillo*, 1980-NMSC-004, ¶ 18, recognized the importance of candor in plea discussions. While *Trujillo* weighed policy considerations in a context removed from IPRA, those same policy considerations have application in the IPRA context. Notably, there is a public interest embodied in Rule 11-410 to "encourag[e] negotiations concerning pleas between the criminal defendant and the [s]tate. Guilty pleas are an essential part of our criminal justice system, and candor in plea discussions aids greatly in the reaching of agreements between the defendant and the [s]tate. This ultimately results in the speedy disposition of cases." *Trujillo*, 1980-NMSC-004, ¶ 18. The effectuation of candor in plea discussions is as much undercut by a risk of public disclosure under IPRA as it is by a risk of admission into evidence in a court of law. *Cf. El-Sayegh*, 131 F.3d at 162 (reasoning that, had a court ruled on a motion to seal a plea agreement submitted to the court before the plea was offered in order to rule on a motion to seal the agreement, "affording public scrutiny [of the plea agreement was] logically incompatible with the nature of the proceedings. . . . The idea's logical incoherence

22

is, of course, reflected in its practical effects—to thwart the use of documents that parties would not submit at all without assurances of confidentiality").

{30} We respect these considerations as at the core of the evidentiary protection for defendants recognized as a "cloak of privilege" by our Supreme Court. *See Trujillo*, 1980-NMSC-004, ¶ 21 ("[A] weighing of conflicting policies demonstrates that the balance is tipped in favor of interpreting Rule [11-]410 as the cloak of *privilege* around plea negotiation discussions." (emphasis added)); *see also State v. Gonzalez*, 2020-NMCA-022, ¶ 10, 461 P.3d 920. Similarly, as reasoned above, we acknowledge district attorneys' requirement for confidentiality to effectively reach plea agreements in accordance with their constitutional authority as "the law officer of the state and of the counties within [their] district." N.M. Const. art. VI, § 24.

{31} The United States Supreme Court has recognized that "[a]lthough many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." *Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 8-9 (1986) (recognizing that there is no First Amendment right of public access to grand jury proceedings). We conclude that plea negotiations are one of those operations, and that recognizing a privilege for plea negotiations is the only way to achieve the purposes of both Rule 11-410 and IPRA, while ensuring that district attorneys are able to fulfill their obligations consistent

23

with their legislative and constitutional roles in New Mexico's criminal justice system and protecting defendants' rights to effective assistance of counsel and to enjoy the right to a public trial, by an impartial jury.

{32} Although the plain language of Rule 11-410 discusses admissibility in court, the purposes of the rule cannot be achieved and the constitutional interests at stake here cannot be protected without recognizing the cloak of privilege in the IPRA context. Thus, we exercise caution in relying only on the plain language of Rule 11-410 because the language's "beguiling simplicity may mask a host of reasons why [the rule], apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the [rule]'s meaning." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. This recognition does not prevent the public from having information about how prosecutors are handling cases, or how the FJDA handles PPD cases. Indeed, public oversight is available here based on the considerable information provided by the FJDA regarding its implementation of the Act, including application information and various forms related to PPD, as well as the pleadings filed in connection with the cases against the defendants.

{33} Accordingly, the documents containing plea discussions and the statements of admission are privileged under Rule 11-410 and qualify as excepted from disclosure under Section 14-2-1(L) of IPRA.

# CONCLUSION

{34}     For the foregoing reasons, we affirm.

{35}     **IT IS SO ORDERED.**

_____
**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**ZACHARY A. IVES, Judge**